1

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF SOUTH CAROLINA
                      CHARLESTON DIVISION


UNITED STATES OF AMERICA        :
                                :
        vs.                     :
                                :
RASHAUN ALLEN JUDGE             :    2:17 – CR – 301
```

Status Conference in the above-captioned matter held on Monday, March 12, 2018, commencing at 2:09 p.m., before the Hon. P. Michael Duffy, in the United States Courthouse, Courtroom I, 81 Meeting Street, Charleston, South Carolina, 29401.

APPEARANCES:

        EMILY E. LIMEHOUSE, ESQ., Office of the
        U.S. Attorney, P.O. Box 978, Charleston, SC,
        appeared for the Government.

        CAMERON J. BLAZER, ESQ., 1037 Chuck Dawley Blvd.,
        Mt. Pleasant, SC, appeared for defendant.

```
         REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
       Official Court Reporter for the U.S. District Court
                          P.O. Box 835
                      Charleston, SC  29402
```

1         MS. LIMEHOUSE:  Your Honor, we are here this
2  afternoon in the matter of United States versus Rashaun Alllen
3  Judge, Criminal Docket No. 2:17-301.  Mr. Judge is here today
4  represented by his attorney, Miss Cameron Blazer.  We are here
5  for a status conference in regards to a motion that Mr. Judge
6  filed to relieve counsel.
7    I have some information I'd like to put on the record,
8  Your Honor, that I believe is pertinent to Mr. Judge's motion,
9  whenever you'd like to hear from me.  I know Miss Blazer has
10 some things she'd like to put on the record as well.
11         THE COURT:  I'll tell you what I'm going to do.  I'm
12 going to hear from you first --
13         MS. LIMEHOUSE:  Perfect.
14         THE COURT:  -- if you'll slow down a little bit for
15 me.
16         MS. LIMEHOUSE:  I'll work on that.  Thank you.
17    As Your Honor is well aware, Mr. Judge pled guilty
18 pursuant to a plea agreement that the parties entered into
19 months ago.  Pursuant to that plea agreement, Mr. Judge has
20 cooperated with the Government and various federal agencies,
21 both FBI and ATF and DEA, during the course of his
22 cooperation.  He's had numerous sit downs with these agencies
23 and provided lots of information, both relevant to the case
24 that brought us here today, as well as other criminal activity
25 in the area.

1       Miss Blazer, during the course of his cooperation, has
2    maintained contact with me and the various agents and agencies
3    that Mr. Judge has cooperated with.  She contacts me every few
4    weeks to see sort of the status of where we are, to make sure
5    we're on the same page, so what our long-term goals are for
6    Mr. Judge and how we think he can achieve those goals.  And
7    she also discusses these goals and his cooperation with the
8    individual agents who have sat down with Mr. Judge.
9       During the course of her representation of Mr. Judge, I
10   think it's not an overstatement for me to say that Miss Blazer
11   has represented him more vigorously than any other attorney I
12   think of the defendants that I've prosecuted.  She cares very
13   deeply about Mr. Judge's interests and believes very strongly
14   that the plea agreement that we entered into is most
15   beneficial for both Mr. Judge and everyone involved, and of
16   course I agree as well.
17      But for many reasons, the information that Mr. Judge has
18   provided thus far is very likely to lead to a benefit for him
19   in the long run.  The million dollar question is when will
20   that benefit come.  And that is something that I can't assure
21   him or Miss Blazer.  But we both know that the nature of the
22   information that he's provided and the people about whom he's
23   provided information, are likely to lead to some sort of
24   benefit in the long run.
25      So I think Miss Blazer and I are on the same page as far

1      as where we think this case will end up, it's just a matter of
2      when.  And it, of course, is contingent on other cooperators
3      and other people beyond those people in this room today.  It's
4      contingent on the individual investigators who are
5      investigating, based on the information that Mr. Judge has
6      provided.  I feel confident that they are diligently
7      investigating, as they would any other leads.  But
8      particularly given Miss Blazer's persistence and zealous
9      advocacy on behalf of Mr. Judge, that they are pursuing those
10     leads that Mr. Judge has provided, and that that will in turn
11     lead to some sort of benefit in the long run.
12          For those reasons, I just want the Court to know the
13     Government's position as far as Miss Blazer's representation
14     of Mr. Judge, and where we sort of stand on the plea
15     agreement, why we got here and where we may be, it's just a
16     matter of when we will be there.
17               THE COURT:  Thank you, ma'am, I appreciate that.
18          Miss Blazer?
19               MS. BLAZER:  Thank you, Your Honor.  It is correct
20     that we entered into a plea agreement that was filed and
21     entered into on the record last fall.  And while I do agree
22     that -- with Miss Limehouse that on the -- in light of the
23     options that were put in front of us, I did advise Mr. Judge
24     that I thought that plea agreement was the best available
25     resolution for him.  I don't think Miss Limehouse will

1     disagree with me that I did not like that plea agreement, and
2     I did not -- and I had hoped for a more favorable plea
3     agreement as a result of the cooperation.
4         And the difficulty that Mr. Judge and I have at this point
5     is not one of disrespect or dislike.  I like Mr. Judge, and I
6     believe Mr. Judge likes me.  I'm not mad at him.  Sometimes we
7     come to these status conferences and you -- I've got arms
8     crossed -- but you see lawyers with their arms crossed,
9     irritated that they've been called out by their clients.  I'm
10    not upset with Mr. Judge that we're here, and I hope that the
11    Court will give me a little bit of latitude to give you a
12    reason not to be upset either.
13        As I think you're aware from our plea agreement, from our
14    plea colloquy, Mr. Judge made a very difficult decision to
15    enter his plea.  We did not enter it precisely under Alford,
16    but as you will recall, we said that while we disagreed with
17    the Government's articulation of the facts of that night, we
18    believed that information provided during the course of his
19    proffer suggested that the charge of a 924(c) against
20    Mr. Judge was supported by other conduct not contained in the
21    indictment.  And so we would have been -- it would have been
22    difficult to plead under Alford, in light of that fact.
23        Mr. Judge has maintained, through his proffer and
24    throughout my relationship with him, that the facts of that
25    particular night are not as the Government perceives them.

1    And we were up until the eleventh hour trying to decide are we
2    going to go -- were we going to plead or were we going to have
3    a trial, even after we had cooperated on multiple occasions
4    with three different agencies, by virtue of that difference
5    with the Government.
6        Mr. Judge's prosecution began when he was contacted by an
7    ATF agent, Miss Sherry Hamlin, and informed that there was a
8    warrant against him.  And she let him know that if he turned
9    himself in, she would support a bond for him.  She -- and she
10   said so at his initial appearance.  She had not run that by
11   Miss Limehouse, nor by the Court, and no such bond was given
12   to Mr. Judge.  And the Court, I think, can understand how that
13   set things off, from a trust perspective, on a tenuous foot.
14       The fact that in spite of his many efforts at cooperation,
15   we never could get to a place where he and the Government saw
16   eye to eye about the events of that night, I think have
17   contributed to that trust gap.
18       And because of the extremely lengthy sentence that he
19   faces in the absence of a 5K, the uncertainty of when and with
20   what -- at what quality will a 5K come into his life, is
21   deeply unsettling to him.  And so he and I have had numerous
22   discussions since the entry of his plea about whether or not
23   withdrawing that plea and going the trial would be the better
24   option for him.
25       I can not advise him to do that, because notwithstanding

1    his explanation of what happened that night, I am very
2    concerned, under the Alford standard, that the evidence is so
3    substantial circumstantially, that he would risk conviction,
4    and that that conviction would come with an even greater
5    burden -- penalty burden than the one that he is currently
6    facing.  And to withdraw the guilty plea that we entered into
7    would, I fear, obviate any opportunity that he might have in
8    the future for a 5K.
9    So we are at an impasse in terms of my advice and his
10   desires.  I deeply desire, and I think Miss Limehouse has made
11   it clear that I've made that clear, that Mr. Judge not be
12   facing a 25-year prison sentence for an offense that was based
13   on a police encounter that was extremely limited, not based on
14   some lengthy investigation into his conduct, not based on any
15   allegations of violence against Mr. Judge.  I have profound
16   concerns that a 25-year sentence for somebody like Mr. Judge
17   is simply unfair, but it is the sentence that the Government
18   has at its disposal to impose on Mr. Judge at this point.  And
19   it would be even greater if he were to go to trial and lose.
20   So I wanted to make it clear to the Court that whatever
21   happens after today, if Mr. Judge determines that a different
22   lawyer would serve him better than I can, I hope that the
23   advice that I am giving in open court is ultimately born out
24   by the action that the Government has promised to take in the
25   event that that information results in prosecutions, and I

1    believe on the basis of the nature of the information, it
2    must.  Because the people involved are not penny ante drug
3    dealers on the corner, the kind of folks that I come to you
4    and ask for probationary sentences for.  These are not small-
5    time drug dealers.  These are significant members of an
6    organized group of people involved in Atlanta and here who are
7    moving hundreds of thousands of dollars worth of illicit
8    substances in and out of Charleston.  And the information that
9    Mr. Judge has provided is credible, it checks out with
10   information that DEA has.  I know that DEA has already
11   initiated one stop against one of the most culpable
12   individuals.  That stop did not result in an arrest.  But he
13   is currently on federal supervision, and I am certain that his
14   days are numbered, and that it will be in significant measure
15   because of information that Mr. Judge provided, that he,
16   perhaps not alone, but almost alone, could offer.
17       So I hope I get an opportunity at some point in the future
18   to argue to you why a sentence radically less than 25 years is
19   appropriate for Mr. Judge.  I hope that that is my charge when
20   that 5K that I expect the Government to file, happens.
21   Because I know that I can make that argument, and I know that
22   I will do so with a full heart in support of the life that I
23   believe Mr. Judge can and should live after his term of
24   incarceration.
25       So that having been said, it's his show at this point, I

1    think.

2           THE COURT:  Let me ask you this.  I think the record
3    indicates that you're retained, is that correct?

4           MS. BLAZER:  Yes, sir.  And for the record, I do
5    believe that if I were relieved, Mr. Judge is indigent, his
6    mother retained me, she paid me.  He does not have an income,
7    he does not have significant funds, so if he seeks to relieve
8    me at the end of this hearing, I do ask that the Court have
9    him evaluated for court appointed representation, because I
10   think he should qualify.

11          THE COURT:  Thank you.  Mr. Judge, be glad to hear
12   from you.

13          THE DEFENDANT:  Yes, sir.  I think Miss Blazer pretty
14   much put everything into perspective.  It isn't a personal
15   problem between us, I just feel like the facts of the
16   circumstances the Government has is kind of outweighing, but I
17   just disagree with the sentencing.  That's it basically.

18          THE COURT:  Hold on a minute.  Pick that mike up if
19   you would.  Thank you.

20          THE DEFENDANT:  Yes, sir.  I said I think Miss Blazer
21   pretty much put everything into perspective as far as the
22   relationship, and she really said everything, basically.

23          THE COURT:  Okay.  That puts me in a quandary for
24   this reason.  You don't often hear the U.S. Attorney stand up
25   and say what she said in court today.

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Saying that it's not going to happen this
3    minute, but you're very likely going to get a big break from
4    the Government.

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Miss Blazer is saying she agrees with
7    that.  And you're saying, wait a minute, I'm ready to pull the
8    plug because I'm not really sure what's going to happen.
9    That, in essence, is what you're doing.

10        Are you telling me you want to withdraw this plea and go
11   to trial?

12           THE DEFENDANT:  On my way in here, I did.  I have no
13   knowledge of what Miss Limehouse informed her of as we came
14   in.  Because I just kind of feel like as up until now, I've
15   been told a lot of things that haven't been done.  So I don't
16   feel -- I didn't feel like that it would be in my best benefit
17   to, at a 25-year plea, I could still end up with a sufficient
18   amount of time that isn't really relevant because the facts
19   aren't in this case.  So it being that everything that they've
20   said to me hasn't been done, or I haven't seen, I don't know
21   if I can believe what's been coming from them.

22           THE COURT:  Let me put it another way.  The options
23   you have right now are to believe it's going to happen,
24   because the U.S. Attorney has said she thinks it's going to
25   happen and because Miss Blazer said she thinks it's going to

1    happen, or you taking your feelings that it is not happening

2    quickly enough, and throw aside any benefit you've gotten from

3    cooperating with the authorities, or from your plea agreement,

4    and saying, I'll go to trial.  And you've heard Miss Blazer's

5    evaluation of it; if you go to trial, it's not a really rosy

6    picture for you with a jury.

7        So I don't know what you gain at this point in the

8    proceedings, that you can't wait to find out what's going to

9    happen.

10            MS. BLAZER:  And if I may add one thing to the

11   record, just to clarify.  One of the disagreements that we've

12   had over the course of my representation is about the law

13   applicable to the police encounter on the night in question.

14   And I have told him in no uncertain terms that I think there

15   are a list of mistakes made by the North Charleston police

16   department in the evening of this encounter.  But I have also

17   explained to him that I think that there are legal pitfalls

18   that prevent me from being able to successfully suppress the

19   evidence of that encounter, notwithstanding those police

20   mistakes, because of a variety of legal doctrines, including

21   standing, because this was an open field, questions about the

22   applicability of the open fields doctrine, questions about the

23   boundary lines between reasonable suspicion and probable

24   cause, and intervening acts and that then would result in

25   inevitable discovery.  So we would have had a lot of legal

1    arguments on both sides to make with regard to the suppression
2    of the evidence.  And so if the evidence is not suppressed,
3    which my expectation would be that at the end, notwithstanding
4    issues that could legitimately be raised about the way the
5    police conducted their inquiry, we would be left with an
6    evidentiary issue before a jury, and 12 people who have never
7    met Mr. Judge, don't care about him, come in, hear what the
8    Government has to say, hear what I have to say, and I fear
9    would be very hard pressed to ignore the circumstantial
10   evidence, not the absolute proof, but the circumstantial
11   evidence that was present that evening.  I believe Mr. Judge
12   about what he says happened that night.  That doesn't mean I
13   believe that a jury will.
14            THE COURT:  All right.  Mr. Judge, I have to give you
15   the legal version of how it looks from my point of view.
16   That's your lawyer; you can fire her if you want to.  But if
17   you do that, and if you qualify as indigent, then I'm going to
18   appoint somebody to represent you.  You're not going to find
19   anyone who knows any more about this case than Miss Blazer,
20   and not likely find anyone as competent or experienced as
21   Miss Blazer.  And then you're going to turn around and go in
22   front of a jury with whomever that person may be, as your
23   lawyer.
24       Now, you think about that.  Because you're ready to pull
25   the plug on things you don't know or understand at the moment.

1    You've been given representations and some assurances of what
2    will happen.  And before you throw those away, you better
3    sleep on it.  You understand what I'm saying?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  Irrespective of the factual allegations
6    and the subsequent developments on the field that night,
7    Miss Blazer is pretty good at assessing evidence and how to
8    present it.  It seems to me like, according to her, you'd be
9    ill advised, and she's told you so, to throw the opportunity
10   away to get a motion from the Government for a reduction in
11   your sentence.  If you get convicted, your time is going to be
12   so substantial, then it's going to be hard, if you don't get a
13   motion for a downward departure from the Government, it's
14   going to be hard for you to get any benefit from all that
15   you've done or all that she's tried to do for you.
16       Now, I don't know if that makes any sense to you.  That's
17   the best way I can put it.  Right now, you have some promise.
18   If you go in front of that jury, you have uncertainties and
19   maybe not such a great chance.  So you weigh it and you think
20   about it and you let me know if you want to dispense with her
21   services, and I'll withdraw this guilty plea and we'll try the
22   case.  That's what we're here for.  If you want to do that,
23   we'll do that.  But at the end of the day, when that jury
24   comes back, it's all over.  Okay?
25         That's the end of this status conference, unless anybody

1   has anything else they want to add.

2           MS. LIMEHOUSE:  Nothing further from the Government,
3   Your Honor.

4           MS. BLAZER:  No, sir, Your Honor.  Would you like him
5   to inform you through me or in writing?

6           THE COURT:  Well, I would like him to inform me both
7   ways.  I'd like to know that you're informed of his decision,
8   and so he'll feel free, you can write me directly whatever you
9   want to say.

10          THE DEFENDANT:  Yes, sir.

11          MS. BLAZER:  Thank you, Your Honor.

12          THE COURT:  We'll be at recess or adjourned.

13

14      (Court adjourned at 2:33 p.m.)

REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.

S/Debra L. Potocki
_____
Debra L. Potocki, RMR, RDR, CRR