THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. NO. 2:17-cr-0301-RMG |
| ) | |
| v. ) | |
| ) | |
| ) | |
| **Rashaun Allen Judge** ) | |
| ) | |
| ———————————————— ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant, Rashaun Judge ("defendant"), has received every opportunity available to a federal defendant. Yet, at each opportunity, he chose to reoffend, minimize his conduct, and attempt to manipulate the judicial system. As fully set forth below, the government requests a sentence of 15 years, a sentence which we believe is sufficient but not greater than necessary to achieve the goals as set forth in 18 U.S.C. § 3553(a).

**I.    Factual Background**

On July 13, 2016, around 9:24pm, North Charleston Police Officers were dispatched to an empty lot in reference to a suspicious vehicle. Officers approached a black Buick Lacrosse in an open field. Officers first spoke to a man on foot who was walking around the property. The man stated that it was his property, and that they were sitting on the property in his friend's car. Officers then approached the driver, who got out of the driver's seat. Officers smelled marijuana coming from the car when the driver got out. Officers asked for the driver's license, later determined to be the defendant Rashaun Judge. The defendant stated that he was the registered owner of the car and admitted to having marijuana in his pocket. Officers searched the defendant and found

approximately 3.3 grams of marijuana in his pocket. Because he was honest, officers decided to write him a citation.

While the officer was writing the citation, the defendant and the second man fled the scene on foot. Because officers still had the defendant's driver's license, they decided to issue a warrant rather than run after the men. The officers then searched the car. In the driver's side door panel, officers located a purple crown royal bag containing approximately 4.3 gross grams of crack and 5.7 gross grams of cocaine, as well as a silver Charter Arms .38 special with a black handle loaded with 5 .38 Special bullets. Officers confirmed that the vehicle was registered to the defendant. On October 10, 2016, a NCPD officer saw a silver Toyota Camry disregard a stop sign. Thereafter, the officer conducted a traffic stop and determined that Rashaun Judge was the driver. The officer arrested the defendant on the active warrants. The defendant had $5,550 in his possession at the time of his arrest. The defendant has previously been convicted for a crime punishable by a term of imprisonment exceeding on year and is therefore prohibited from possessing a firearm. The firearm and ammunition were manufactured outside of South Carolina. The drugs were lab tested and confirmed to be 3 grams of marijuana, 2.97 grams of crack, and 5.55 grams of cocaine.

## II.     Procedural History

On April 11, 2017, the federal grand jury in Charleston returned a three-count indictment charging the defendant with knowingly, intentionally, and unlawfully possessing with intent to distribute a quantity of cocaine and a quantity of cocaine base in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) (Count 1); knowingly possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding on year in violation of Title 18, United States Code, Section 922(g) (Count 2); and possessing a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c) (Count 3). On

October 23, 2017, the defendant entered a guilty plea pursuant to a plea agreement in which the defendant agreed to cooperate with the government and plead guilty to Count 3 in exchange for the dismissal of the remaining counts in the Indictment. Paragraph 8 of the plea agreement set forth that "[p]rovided the Defendant cooperates pursuant to the provisions of this Plea Agreement, and the cooperation is deemed by the Government as providing substantial assistance in the investigation or prosecution of another person, the Government agrees to move the Court for a downward departure or reduction of sentence pursuant to United States Sentencing Guidelines § 5K1.1, Title 18, United States Code, § 3553(e) **or** Federal Rule of Criminal Procedure 35(b)." ECF No. 51. Therefore, under the terms of the plea agreement, the defendant faced a mandatory minimum term of imprisonment of 25 years unless the government filed a motion for downward departure. Thereafter, the defendant cooperated with DEA and FBI. However, he began to assert his innocence and contest his guilt for the underlying conduct.

On February 15, 2018, the defendant filed a motion to relieve his counsel, claiming "ineffective assistance of counsel, lack of communication, and a conflict of interest." ECF No. 55. On March 12, 2018, the Court conducted a hearing on the defendant's motion to relieve his attorney. At the conclusion of the hearing, the Court instructed the defendant to notify the Court in writing of his decision to remove his attorney. ECF No. 59. On June 21, 2018, the Court conducted a second hearing on the matter, during which the defendant instructed the Court that he intended to file a motion to withdraw his guilty plea. On June 29, 2018, the defendant filed a pro se affidavit claiming to be a Moorish American. ECF No. 60. On July 19, 2018, the defendant filed a motion to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(e). ECF No. 61. In his motion, the defendant claimed that during the change of plea hearing, he "effectively" entered a plea under *North Carolina v. Alford*, and that although he "believed there

3

was substantial evidence relating to the incident for which he was indicted that he would likely be convicted at a trial," in the months following his guilty plea, he "has lost confidence in that decision and prefers to litigate his case for innocence before a jury of his peers." *Id.* Shortly before Judge Duffy retired, he granted the defendant's motion to relieve his counsel but deferred ruling on the defendant's motion to withdraw his guilty plea until the case was reassigned. ECF No. 69.

This Court assumed responsibility over the case on August 29, 2018 and appointed Cameron Blazer to serve as the defendant's standby counsel. On September 25, 2018, the Court conducted a hearing on the defendant's motion to withdraw his guilty plea. During that hearing, the Court directed the government to notify the defendant as to whether he would obtain a downward departure. Thereafter, the government filed a proposed motion for downward departure. ECF Nos. 81 & 82. Despite the government's submission, the defendant refused to withdraw his motion to set aside his guilty plea and continued to assert his innocence. In light of the defendant's inconceivable positions, the government filed a motion for a psychiatric examination. ECF No. 86. The Court ordered a psychiatric evaluation on October 18, 2018. ECF No. 89.

After the defendant's return to the district, the Court held a status conference on March 14, 2019. During the status conference, the Court prompted the government to extend an 11(c)(1)(C) plea offer to the defendant. Thereafter, the government offered the defendant an 11(c)(1)(C) plea to 180 months, representing a 10-year reduction from the statutory mandatory minimum. The defendant rejected the government's offer and continued to assert his innocence on the underlying charges and express his desire to withdraw his guilty plea. The Court denied the defendant's motion to withdraw his guilty plea and held that the government represented to the Court that the defendant earned a downward departure motion and enforced the motion. In light of the Court's

ruling, the defendant no longer faces the statutory mandatory minimum penalty of 25 years. For the reasons set forth below, the government requests a sentence of 15 years.

### III.  Argument

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. Once that is completed, the district court must give both parties an opportunity to argue for whatever sentence they deem appropriate and that district court then consider[s] all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *United States v. Susi*, 674 F.3d 278, 282 (4th Cir. 2012) (internal quotation marks and citations omitted). Pursuant to 18 U.S.C. § 3553(a), the factors the Court considers in imposing a sentence are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) any relevant policy statement; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victim. *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). Under these factors, a 180-month sentence is warranted.

**1.   The nature and circumstances of the offense warrant a 15-year sentence.**

As set forth above, the defendant was charged in a three-count indictment charging a violation of 18 U.S.C. § 922(g), 21 U.S.C. § 841(b)(1)(C), and 18 U.S.C. § 924(c). The government will highlight notable facts about the underlying conduct described in detail above that point to the severity of the offense. First, the defendant possessed a loaded firearm, which posed a danger to the community. Additionally, the defendant possessed numerous controlled

5

substances, indicative of drug dealing activity and further evincing his threat to the community. The defendant possessed the firearm and controlled substances together, indicating a potential for violence in conjunction with the drug trafficking activity. Additionally, the defendant fled the scene, putting both the officers' safety at risk, as well as the safety of those in the community. While the officer chose not to chase the defendant, his fleeing the scene created the risk. The nature and circumstances of the offense weigh in favor of imposing a 15-year sentence.

**2.    The history and characteristics of the defendant demonstrate that a 15-year sentence is necessary to afford adequate deterrence and protect the public from future crimes.**

The history and characteristics of the defendant, most importantly his prior federal conviction for the same conduct for which he was charged in the instant offense, weighs heavily in favor of imposing at 15-year sentence. First, the defendant has two convictions for failure to stop for a blue light, which, in conjunction with his decision to flee the scene during the offense charged, shows that he is likely to flee law enforcement. PSR ¶¶ 18, 20. Additionally, the defendant has two convictions for offenses involving firearms. PSR ¶¶ 18, 23. These two convictions, in combination with the firearm charge in the Indictment, demonstrate that the defendant has the desire and ability to obtain firearms.

Moreover, the defendant has continuously violated conditions of bond, parole, or release. Back in 2002, the defendant was convicted on a YOA weapons charge. PSR ¶ 18. After his release, he was arrested for a drug violation while on probation. PSR ¶ 19. In 2003, he was charged with additional drug charges and failure to stop for a blue light while on probation and while out on bond on the 2002 drug charge. PSR ¶ 20. In 2007, the defendant was charged with robbery while out on bond on drug trafficking charges. PSR ¶ 22. The defendant was arrested for a weapons charge in 2008 while out on bond for three drug charges, as well as a firearm charge.

6

¶ 23. The defendant has a controlled substance charge from 2014 and was out on bond for that charge at the time of the conduct underlying the federal indictment. PSR ¶ 4. In April 2016, he incurred a weapons charge and was on bond on those charges when he committed the underlying conduct. PSR ¶ 31. In October 2016, when he was arrested for the underlying offense, he was out on bond on three separate charges. PSR ¶ 32. The defendant's sustained desire to engage in criminal conduct demonstrates that he is both unwilling and unable to comply with the terms and conditions of release, necessitating a severe penalty.

Most notably, the defendant was convicted in federal court of the exact same charges with which he is currently charged. Judge Duffy previously sentenced the defendant to 36 months' imprisonment after the government filed a 5K motion on his behalf. This reduced sentence was a substantial departure from the term of imprisonment he was facing. Following the term of incarceration and after numerous violations of the terms of his supervision, Judge Duffy revoked the defendant's term of supervised release and sentenced him to prison for an additional eighteen months. The defendant's current charges establish that he has not learned his lesson, but is rather back out on the street committing the same conduct. The defendant's criminal record demonstrates that he remains undeterred by federal prison. Therefore, this favor weighs heavily in favor of imposing a 15-year sentence in order to afford adequate deterrence and protect the public from future crimes.

    **3.**    **A 15-year sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and avoids unwarranted sentencing disparities.**

As fully set forth above, the underlying offense is a serious offense that warrants a serious penalty. The severity of the underlying conduct becomes most apparent when one studies the statutory penalty. In the past five years, the courts and the legislature have changed the federal

sentencing structure, many times to a defendants' benefit, evidenced most pointedly in the Supreme Court jurisprudence and the passage of the First Steps Act ("FSA"). Importantly, the FSA imposed drastic changes to the penalties for both drug violations and, most relevant here, to violations of 18 U.S.C. § 924(c). Prior to the FSA's passage, defendants charged with multiple violations of 18 U.S.C. § 924(c) faced a mandatory 25 years for each consecutive conviction. The FSA significantly reduced the mandatory penalty for consecutive § 924(c) violations. For example, a defendant who robs two banks in a row, brandishing a firearm during each robbery, will be guilty of two § 924(c) offenses and will have mandatory consecutive sentences of 14 years (composed of two consecutive 7-year sentences) plus the sentence for any predicate offense, but will no longer face the mandatory 25-year consecutive sentence. Under the new language, the 25-year mandatory minimum in § 924(c)(1)(C)(i) does not apply *unless* the defendant has a prior § 924(c) conviction that became final before the defendant's current § 924(c) violation.

So, while Congress evaluated the federal sentencing structure and imposed vast changes to statutory penalties, Congress *did not* alter the statutory penalty that directly applies to the defendant's conduct. The importance of Congress' refusal to change the statutory penalty in this instance cannot be overstated. In a climate in which courts and the legislature are reducing sentences and statutory penalties, the mandatory 25-year sentence remains intact, demonstrating that the defendant's continued desire to possess a firearm in furtherance of his drug trafficking crimes in an incredibly severe offense which must be punished accordingly. Not only does this statutory penalty reflect the seriousness of the offense, but also the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. A sentence below the requested 15-years would result in a windfall for the defendant, a benefit that similarly situated defendants would not receive.

Although the Court held that the defendant was entitled to a motion for downward departure, the law sets forth that a 25-year sentence is appropriate for conduct such as this. By requesting a 15-year sentence, the government recognizes the defendant's prior willingness to cooperate and affords him an adequate benefit for doing so. However, the government does not lose sight of the applicable statutory penalty and requests that the Court consider it in fashioning an appropriate sentence. Therefore, 15-year sentence not only reflects the seriousness of the offense, but also promotes respect for the law, provides just punishment, and avoids unwarranted sentencing disparities.

## Conclusion

In light of the 3553(a) factors as set forth above, the government requests that the Court impost a 15-year sentence.

SHERRI A. LYDON
UNITED STATES ATTORNEY

By: s/ *Emily Limehouse*
Emily Evans Limehouse (Federal ID #12300)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402
emily.limehouse@usdoj.gov

June 14, 2019