IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) | Criminal Number: 2:17-301 |
| -versus- | | SENTENCING MEMORANDUM |
| RASHAUN JUDGE | | |

This Court is well-apprised of the complex procedural and legal course this case has taken since its inception in April of 2017, and the Government's sentencing memorandum summarizes that history accurately. While this case has been long on frustration for both sides, an understanding of several pivotal moments in Rashaun Judge's life and in the life of this case provide context to his decision-making throughout this case, as well as his prospects for success whenever this Court deems his term of incarceration should end. When viewed with this context, Judge should be seen not as an inveterate recidivist but as a man whose justifiable lack of faith in institutions led him to take extraordinary measures to hold those institutions to the same account the Government now seeks to hold him.

As his PSR reflects, Judge was 17 when he was first arrested in possession of a small amount of drugs and a gun, after refusing to stop for blue lights; he was arrested under similar circumstances the next year. Ultimately, he served an active YOA sentence for these two offenses. His next criminal arrest was more than three years after his release from that sentence. In 2007, after having served his YOA sentence and being successfully discharged from parole, Judge was getting his life back on track. With the help of his

mother, he was accepted to community college in Virginia Beach, Virginia, with the goal of being certified as an auto mechanic. He and several roommates shared an apartment; while he and another roommate were home on summer break, another roommate stole numerous items (video games, shoes, and such) from their rooms. Upon return to school, Judge and his roommate asked their other roommate to return their things. When he would not, Judge's roommate went to the location where their belongings were believed to be and retrieved them. He and Judge were both charged with felony burglary. Although he maintained his innocence, when presented with the choice of going to trial and facing fifteen years' incarceration or accepting a plea to disorderly conduct, Judge accepted the plea. While he was given probation, Judge felt railroaded and taken advantage of. He never fully recovered from the experience and upon return to South Carolina fell back into low-level drug distribution, which resulted in his federal prosecution in 2007.

Throughout his life, Rashaun Judge's mother has been a constant source of support. She has also been a constant example of hard work and fortitude. For more than thirty years, she was employed by the Piggly Wiggly Carolina Company as a computer operator. This Court is well-aware of the fate that befell PWCC's employees as the value of the ESOP shares plummeted between 2005 to 2015, leading to the federal class action case filed in 2016 and overseen by this Court. In essence, in 2015 and 2016, it became clear that the hard work that Gwendolyn Judge had put in throughout her adult life would not be rewarded with a comfortable retirement but, instead, continued days and hours of backbreaking work as a housekeeper at the North Charleston Performing Arts Center. Again, and in a devastating way, Rashaun observed the system taking advantage of people. Ultimately, after more than thirty-five years of employment, Gwendolyn was

recently notified that her portion of the Piggly Wiggly settlement will be about $2500, an amount she is yet to receive.

In an effort to shore up both of their futures, Gwendolyn and Rashaun decided in early 2017 to pool their resources and invest in Rashaun's dream of owning a garage for repair and body work.[1] As is detailed in Exhibit A (Business Documents), they set about to do things the right way—registering with the secretary of state, establishing an Employer Identification Number with the IRS, leasing equipment and a facility—to make use of Rashaun's training and skill and make a better life for them and for Rashaun's children. The lease was signed on March 1, 2017. Gwendolyn contributed by buying an expensive wheel balancing machine, lift, and tire changer, and the business got underway right away, hiring employees and marketing their services.

On April 27, 2017, Judge turned himself in on the charges that bring him before this court. He had been contacted the day before by Sherry Hamlin of ATF and made aware of the federal warrant for his arrest, based on an encounter with North Charleston police in July of 2016. She asked him to turn himself in, which he did without delay; she had represented to him that if he did so, she would ask the judge not to detain him pretrial. Later that day, an initial appearance was held before Magistrate Judge Baker, and the Government moved for detention. At a hearing on that motion before Magistrate Judge Marchant on May 1, 2017, the Agent Hamlin acknowledged to the court that she had made the representation about detention to Judge and that he had acted quickly to turn himself in, but the Court held him detained, nonetheless. Rashaun appealed that decision in June of 2017 and was again ordered detained.

---

[1] Since 2015, Judge had owned a lawn care business (*See* Exhibit A at 19-24) but wanted the stability and income potential of a brick-and-mortar business.

Gwendolyn tried to keep the business going for as long as she could, but with Rashaun unable to carry out day-to-day oversight, she laid off the staff and negotiated an early end to the lease, though she was unable to recoup the investment in the hydraulic lift.[2]

As the Court is aware from its previous review of the transcript of the plea hearing, Judge had numerous reservations about his plea, centered on two key issues with the conduct of the North Charleston police on that night. First, Judge was concerned that the police had exceeded the scope of their right to enter the vacant lot where he was parked, when the owner of the lot expressed to them that there was no problem. The undersigned shared that view but was constrained by other Fourth Circuit precedent to counsel Judge that his subsequent decision to flee the encounter would act as a cure to any such violation and make the search of the vehicle fair game. His second key area of concern was a factual misstatement on the face of the arrest warrant in the state case from which this case was adopted. While the undersigned agrees that the warrant is inaccurate, because it did not act as a search warrant, again the circumstances required counsel that such an error would not result in dismissal of the case but merely impeachment evidence that would likely be overborne by the video evidence in the case.

Not one of these experiences justifies Judge's admitted continued involvement in 2016 with drug distribution. And while, the Government is correct in stating that Judge has not accepted responsibility for the facts *as alleged in the indictment,* at no time during the lengthy litigation of the validity of the guilty plea has Judge disclaimed that he was, in

---

[2] The undersigned contacted Judge's shop's landlord, Grady Elam, on June 12, 2019, who reported that Judge was a "great tenant," a "nice, likeable guy," who "kept the place spotless." Offering to serve as a reference if and when Judge has another opportunity to lease space for his business, Elam offered, "I wish I had more tenants like him."

fact, involved in illicit drug distribution around the time of the indictment. But what each of these snapshots shows is an instance from which Judge has, understandably, concluded that "the system" of rules and power protects and excuses some and provides no protection or recourse to others. It is against this backdrop that Judge's considerable efforts at *pro se* litigation should be viewed, rather than, as the Government has argued, as evidence of his incorrigibility and need for lengthy incarceration.[3]

Since his incarceration in April of 2017, opportunities for self-advancement have been few, though Rashaun was able to take and complete the Turning Leaf inmate program before it was discontinued. (Exhibit B – Certificate of Completion) He will be eligible for participation in their post-incarceration program upon completion of his sentence.

Although the circumstances of his arrest and the information provided to the Government throughout his proffers confirms that he had not completely left that life behind in 2016, he was making strong moves in the right direction, with the support of his mother. Notwithstanding that drugs and guns are often a toxic combination and one the Congress has sought to punish severely, neither the circumstances for which he is being prosecuted nor any other example from his past show any tendency toward gun violence. In fashioning a just sentence, this Court should weigh heavily the documented steps Judge was taking in advance of his arrest in 2017 to refashion his life toward a sustainable lawful occupation and impose sentence no greater than necessary to balance punishment and incapacitation with rehabilitation.

---

[3] As the Dr. Dawn Graney of the Bureau of Prisons noted in her evaluation that was previously provided to the Court, Rashaun Judge's attitude represents cynicism about the criminal justice system that is common among people who have had significant interactions with it.

                Respectfully submitted,

                BLAZER LAW FIRM
                1037 Chuck Dawley Blvd D100
                Mount Pleasant, SC 29464
                Telephone: (843) 732-4441

By:    */s/ Cameron Jane Blazer*
                Cameron Jane Blazer
                Federal ID Number: 10131

                Attorney for Defendant

Charleston, South Carolina
June 14, 2019